**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | |
|---|---|
| INTERSTATE FIRE & CASUALTY COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>STEEL DYNAMICS, INC., and STEEL OF WEST VIRGINIA, INC.,<br><br>Defendants. | Case No. |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, Interstate Fire & Casualty Company ("Interstate"), by way of Complaint for Declaratory Judgment against Defendants, Steel Dynamics, Inc. ("Steel Dynamics"), and Steel of West Virginia, Inc. ("SWVA" and together with Steel Dynamics, "Defendants"), alleges upon knowledge as to its own acts and otherwise upon information and belief as follows:

**NATURE OF THE ACTION**

1. This is an action seeking a declaratory judgment and declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

2. Steel Dynamics is a steel manufacturer, located in Fort Wayne, Indiana.

3. SWVA is a subsidiary of Steel Dynamics located in Huntington, West Virginia.

4. The subject claim arises out of a radioactive contamination incident that occurred on or about August 21, 2024 at the SWVA steel mill facility located at 2nd Ave. & 17th Street, Huntington, WV (the "Underlying Incident").

5. In this action, Interstate seeks a declaration that any coverage available for the Underlying Incident under Environmental Liability Policy No. USL02135121, issued to Steel

Dynamics with effective dates of December 31, 2021, through December 31, 2024 (the "EIL Policy"), applies excess to Steel Dynamics' first-party property insurance and applicable retentions as described more fully below.

**PARTIES**

6. Interstate is an insurance company organized and existing under the laws of the State of Illinois with its principal place of business located at 225 W. Washington Street, Suite 1800, Chicago, Illinois 60606.

7. Steel Dynamics is a corporation organized and existing under the laws of the State of Indiana with its principal place of business located at 7575 West Jefferson Boulevard, Fort Wayne, IN 46804.

8. SWVA is a corporation organized and existing under the laws of the State of West Virginia with its principal place of business located at 2nd Ave. & 17th Street, Huntington, WV 25703.

**JURISDICTION AND VENUE**

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 2201-02 because: (i) there is an actual controversy between the parties; (ii) the amount in controversy exceeds $75,000, exclusive of interest and costs; and (iii) the matter is between citizens of different states.

10. Venue is proper under 28 U.S.C. § 1391 because the Allianz Policies were issued to Steel Dynamics in this judicial district and thus a substantial part of the events giving rise to the claim occurred in this District.

## FACTUAL BACKGROUND

11. Steel Dynamics' wholly-owned affiliate, SWVA, operates a facility in Huntington, West Virginia (the "Facility"), where scrap metal is processed using an electric arc furnace ("EAF").

12. The EAF generates dust as a byproduct ("EAF Dust"), which requires special handling and disposal.

13. SWVA captures EAF Dust through a baghouse system containing large filters. The collected dust is often subsequently sold to vendors.

14. In or about August 2024, radioactive steel was melted in the EAF, resulting in radioactive contamination of EAF Dust at the Facility. On or about August 21, 2024, Steel Dynamics learned of the contamination after a shipment of EAF Dust delivered to its vendor, Befesa, triggered radiation monitors at Befesa's plant.

15. After discovering the contamination, Steel Dynamics contacted federal, state, and local environmental, safety, and health authorities, including Homeland Security, the United States Environmental Protection Agency, the Nuclear Regulatory Commission, and the West Virginia Department of Health & Environmental Services.

16. Following discovery of the contamination, Steel Dynamics worked with regulators to develop and implement a remediation plan, which included collecting dust from baghouse filters, cleaning and collecting EAF Dust from baghouse buildings, and packaging and shipping EAF Dust by railcar to appropriate waste facilities.

17. Upon information and belief, Steel Dynamics' remediation efforts remain ongoing to date.

18. Upon information and belief, remediation efforts undertaken by Steel Dynamics include, but are not limited to, the assessment, monitoring, and removal of contaminated dust in the baghouse located at the SWVA Facility; replacement of contaminated baghouse filters; packaging, transportation, and disposal of radioactive dust; and railcar rental and mobilization.

## THE POLICIES

### A. The Interstate EIL Policy

19. Interstate issued to Steel Dynamics an Environmental Liability Policy under Policy No. USL02135121 with effective dates December 31, 2021, through December 31, 2024 (the "EIL Policy"). A true and accurate copy of the 2021-2024 EIL Policy is attached hereto as **Exhibit A.**

20. The Insuring Agreement, Section 1, Coverage A – OWN SITE CLEAN-UP COSTS, of the EIL Policy, as modified by Endorsement Number 31, provides, in relevant part:

> **Section 1 – Insuring Agreements**
>
> **A. Own Site Clean-up Costs**
>
> A. The Company will pay on behalf of the **insured, clean-up costs** resulting from a **pollution condition** on or under the **insured's own site** that first commenced prior to the retroactive date stated below on this endorsement, provided the insured is legally obligated to pay as a result of a **claim** for **clean-up costs** resulting from a pollution condition, and such **claim** is first made against the insured and reported to the Company during the **period of insurance**, or any extended reporting period, if applicable.
>
> B. The Company will pay on behalf of the **insured, clean-up costs** resulting from a **pollution condition** on or under the **insured's own site** that first commenced on or after the retroactive date stated below on this endorsement provided:
>
> 1. The discovery of the **pollution condition** is first made during the period of insurance and reported to the **Company** as soon as possible during the period of insurance; or

2. The **insured** is legally obligated to pay as a result of a **claim** for **clean-up costs** resulting from a **pollution condition**, and such **claim** is first made against the insured and reported to the Company during the **period of insurance**, or any **extended reporting period**, if applicable.

**<u>Scheduled insured's own site(s):</u>**

| **Insured's own site:** | Coverage A RETROACTIVE DATE |
|---|---|
| 1. Steel of West Virginia, 2nd Ave. & 17th Street, Huntington, WV | 12/31/2006 |

21. The Insuring Agreement, Section 1, Coverage C – THIRD PARTY CLAIMS FOR BODILY INJURY OR PROPERTY DAMAGE, of the EIL Policy, as modified by Endorsement Number 18, provides, in relevant part:

**Section 1 – Insuring Agreements**

**C. Third Party Claims for Bodily Injury or Property Damage**

The Company will pay on behalf of the insured, loss that the insured becomes legally obligated to pay as a result of a claim for bodily injury or property damage resulting from a pollution condition on, under or migrating from or through and beyond the boundaries of the insured's own site, provided such claim is first made against the insured and reported to the Company during the period of insurance, or any extended reporting period, if applicable.

The Company will pay to indemnify the **insured** for Property Damage to an **insured's** property caused by a **pollution condition** on or under the **insured's own site**, if such Property Damage takes place while the property damaged is on the insured's own site, provided that the discovery of such **pollution condition** is reported to the Company in writing as soon as possible after its discovery by the **insured** and in any event during the period of insurance in accordance with **Section 7 – Claims and Notice Requirements.**

2. The following is added as **Paragraph G. Property Damage to the Insured's Property Sublimit, to Section 3 – Limits of Liability and Deductible:**

**Property Damage to the Insured's Property Sublimit**

"…the most the Company will pay for Loss associated or in connection with **property damage** to the **insured's** property is $10,000,000 Each Incident Limit / $10,000,000 Aggregate Limit regardless of the number of **pollution conditions**, **named insureds**, **insureds**, **claims** or claimants."

3. **Section 3 – Limits of Liability and Deductible, F** paragraph 1. is deleted in its entirety and replaced with the following:

F. **Self-Insured Retention**

With respect to Coverage C above and subject to the policy aggregate limit and coverage section aggregate limit, the Company will pay all loss in excess of the Self-Insured Retention amount stated on this endorsement for the applicable coverage, up to but not exceeding the applicable Each Incident Limit of coverage. The Self-Insured Retention amount applies to all loss, including legal expenses, and will be borne by the insured and remain uninsured. The insurance provided by this policy shall be excess over the applicable Self-insured Retention stated on this endorsement, whether such retention is collectible by reason of the refusal or inability of the insured to pay the retention amount due to insolvency, bankruptcy or any other reason. In no event shall the Company be responsible to make payment under this policy before the insured has paid the Self-insured Retention, and the risk of uncollectibility (in whole or in part) of such Self-insured Retention is expressly retained by the insured and is not in any way or under any circumstances insured or assumed by the Company. The Self-Insured Retention amount on this endorsement may be eroded by retention payments made to or recoveries received from other insurance scheduled to this endorsement for loss arising from Each Incident.

The insured shall promptly reimburse the Company for advancing any element of loss falling within the Self-insured retention**.**

<u>Schedule of Underlying Insurance</u>
Insured's Property policies identified on the Certificate of Property Insurance 570091043297 on file with the Company and any renewals or replacements thereof.

4. **Section 3 – Limits of Liability and Deductible is amended to include the following:**

Solely with respect to Coverage C above and scheduled insured's own sites below, references to deductible in Item 7. PURCHASED COVERAGE SECTIONS – DEDUCTIBLES AND LIMITS OF LIABILITY is deleted in its entirety and replaced with the following:

Coverage C Self-Insured Retention: $5,000,000 Each Incident

5. Solely for purposes of this Endorsement, it is agreed **that Section 4 – Definitions, BB. Property Damage** is deleted in its entirety and replaced with the following:

**BB. Property Damage** means:

1. Physical injury to or destruction of tangible property of parties other than an **insured**, including the resulting loss of use but not diminution in value thereof,
2. Loss of use, but not diminution in value, of tangible property of parties other than an **insured** that has not been physically injured or destroyed,
3. Solely with respect to Coverage E, Paragraph 2., physical injury to or destruction of tangible property of an **insured**, but not diminution in value, and
4. **Natural resource damage.**

**Property Damage does not include clean-up costs.**

<u>**Scheduled insured's owns site(s)**</u>

* * * *

2. Steel of West Virginia, 2nd Avenue and 17th Street, Huntington, WV

22. The Limits of Liability and Deductible section of the EIL Policy, as modified by Endorsement Number 29, provides, in relevant part:

**SELF INSURED RETENTION ENDORSEMENT**

**1.** All references to "deductible" are deleted and replaced with "self-insured retention".

2. **Section 3 – Limits of Liability and Deductible**, paragraph F. Deductible is deleted in its entirety and replaced with the following:

**F. Self-Insured Retention**

1. With respect to **Coverages A through G** and subject to the policy aggregate limit and coverage section aggregate limit, the Company will pay all **loss** in excess of the Self-insured Retention amount stated in the Declarations for the applicable coverage, up to but not exceeding the applicable Each Incident Limit of coverage. The Self-insured Retention amount applies to all **loss**, including legal expenses, and will be borne by the **insured** and remain uninsured. The insurance provided by this policy shall be excess over the applicable Self-insured Retention amount in the Declarations, whether such retention is collectible by reason of the refusal or inability of the **insured** to pay the retention amount due to insolvency, bankruptcy or any other reason. In no event shall the Company be responsible to make payment under this policy before the **insured** has paid the Self-insured Retention, and the risk of uncollectibility (in whole or in part) of such Self-insured Retention is expressly retained by the insured and is not in any way or under any circumstances insured or assumed by the Company.

In the event that more than one Self-insured Retention amount can apply to the same **pollution condition(s)** and results in coverage under more than one coverage section, only the highest Self-insured Retention amount will be applied.

The **insured** shall promptly reimburse the Company for advancing any element of loss falling with the Self-insured retention.

2. With respect to Coverage H and subject to the policy aggregate limit, coverage section aggregate limit and Each Incident Limit stated in the Declarations, the Company will pay all **business interruption expense** and **extra expense** in excess of the Each Deductible (days) stated in the Declarations.

23. The Other Insurance section of the EIL Policy, as modified by Endorsement Number 14, provides, in relevant part:

1. **Section 6 – Conditions, I. Other insurance** is deleted in its entirety and replaced with the following:

**I. Other Insurance**

If other valid and collectible insurance is available to any **insured** covering a **loss, claim, business interruption expense, emergency response cost, or pollution condition**, also covered by this Policy, other than a policy that is specifically written to

apply in excess of this Policy, then the company's obligation to the **insured** are limited as follows:

1. Except as set forth in paragraphs 3. through 7. below, this insurance is primary, and the Company's obligations are not affected unless any of the other insurance is also primary. In such a case, the Company will share with all such other insurance by the method described in paragraph 2 below.

2. If all of the other insurance permits contribution by equal shares, the Company will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first. If any of the other insurance does not permit contribution by equal shares, the Company will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

* * * *

5. This insurance is excess over the Scheduled Underlying Insurance listed on this endorsement and any renewals or replacements thereof, provided, however that this insurance shall be primary as described in paragraphs 1. or 2. above where any such policy in the Scheduled Underlying Insurance below and any renewals or replacements thereof do not provide primary coverage to the **insured** for **loss, claims, business interruption expense, emergency response cost, or pollution condition** covered under the terms and conditions of this Policy. This excess insurance shall in no way be increased or expanded or drop-down as a result of receivership, insolvency, or inability or refusal to pay of any insurer with respect to both duty to defend or duty to indemnify.

<u>Schedule of Underlying Insurance</u>

Insured's Property and Umbrella Liability policies on file with the Company and any renewals or replacements thereof.

All other terms, conditions and exclusions will remain the same.

24. The EIL Policy contains the following definitions:

**Section 4 – Definitions**

D. **Clean-up costs** means reasonable and necessary expenses, including legal expenses incurred with the Company's written consent, which consent shall not be unreasonably withheld or delayed, for the investigation, removal, treatment, containment, neutralization, abatement, monitoring or disposal of soil, surface water, groundwater or other contamination:

1. To the extent required by **environmental laws**;
2. In absence of any applicable **environmental laws**, to the extent recommended in writing by an **environmental professional**; or
3. With respect to a biological hazard, to the extent required to return the insured's own site to its original condition or as required by the local health department, or
4. That have been actually incurred by the government or any political subdivision of the United States of America or any state thereof or Canada or any province thereof, or by third parties.

**Clean-up costs** also includes **restoration costs.** [1]

* * * *

H. **Environmental law** means any federal, state, provincial or local laws, including but not limited to, statutes, rules, regulations, ordinances, guidance documents, voluntary clean-up programs, and governmental, judicial or administrative orders and directives that are applicable to a **pollution condition.**

* * * *

Z. **Pollution condition** means the discharge, dispersal, release or escape, emission, seepage, or illicit abandonment by a third party without the insured's consent, of any pollutant into or upon land, or any structure on land, the atmosphere or any watercourse or body of water, including groundwater.

* * * *

EE. **Restoration costs** means reasonable and necessary costs incurred by the **insured** to repair, replace or restore real or personal property to substantially the same condition it was

[1] The definition of "clean-up costs" is amended in Endorsement No. 10 to include paragraph 3 of the definition.

in prior to being damaged during work performed in the course of **clean-up costs.**

* * * *

**Restoration costs** will not include any costs associated with a betterment or improvement to the damaged property, except to the extent such betterments include the use of materials which are environmentally preferable to those materials which comprised the damaged property, at a reasonable cost. Such environmentally preferable material must be certified by an applicable independent body, or, in the absence of such certification, based on the sole discretion of the Company.

**B. The Property Policy**

25. Steel Dynamics also purchased a Global Property Insurance Policy, Policy No. USP00189324 with effective dates June 30, 2024, through June 30, 2025 (the "Property Policy")

26. The Property Policy issued to Steel Dynamics contains the following relevant Program Sublimits of Liability and Deductible:

**5. PROGRAMS OF LIABILITY**

In the event of loss or damage insured under this policy, this Insurer shall be liable for its proportional share of USD 600,000,000 per **occurrence**, and its proportional share of the following program sublimits and aggregate limits of liability, excess of policy deductibles.

* * * *

**Program Sublimits of Liability**

* * * *

$25,000,000 per occurrence – as respects to Radioactive Contamination.

* * * *

**9. DEDUCTIBLES**

* * * *

A. USD 2,500,000 - All losses, damages or expenses arising out of any one **occurrence** as respects Property Damage losses . . .

27. The Property Policy contains the following relevant Terms and Conditions:

**I. TERMS AND CONDITIONS**

**1. Insured Property**

Real and personal property while such property is located anywhere within the territorial limits of this policy, (including while in due course of **Transit**), which is owned, used, intended for use by the **Insured**, acquired by the **Insured** or in which the **Insured** has an insurable interest, and property of others in the **Insured's** care, custody or control, including the **Insured's** liability for such property, and including the costs to defend any allegations of liability for loss or damage to such property; . . . .

* * * *

28. The Property Policy contains the following relevant Exclusions:

**3. Loss or Damage Excluded**

This policy does not insure the following:

* * * *

B. Loss or damage caused by nuclear reaction or nuclear radiation or radioactive contamination, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate or remote, or be in whole or in part caused attributed to, or aggravated by loss or damage insured herein except:

1) If loss or damage not otherwise excluded by this policy ensues, liability is specifically assumed by the Insurer for such ensuing loss or damage insured hereunder but not including any loss due to nuclear reaction, nuclear radiation or radioactive contamination.

> 2) The **Insurer** shall be liable for loss or damage caused by sudden or accidental radioactive contamination, including resultant radiation damage for each occurrence from material used or stored or from processes conducted on insured premises, provided at the time of loss there is neither a nuclear reactor capable of sustaining nuclear fission in a self-supporting chain reaction nor any new or used nuclear fuel on the insured premises;

* * * *

29. The Property Policy contains the following "other insurance" provision:

> **IV. GENERAL CONDITIONS**
>
> **4. Other Insurance**
>
> Except as referred to in Contributing Insurance, Excess Insurance and Underlying Insurance clauses, this policy shall not insure to the extent of any other insurance, whether prior or subsequent hereto in date and whether directly or indirectly insuring the same property against the same loss or damage. This insurance shall be excess of and/or supplementary to the amount recoverable from such other collectible insurance. Notwithstanding this Other Insurance Provision, this Policy will make prompt payment of the loss which would have been otherwise recoverable hereunder as if this clause did not exist, and the Insured shall cooperate with the Insurer to pursue recovery of any Other Insurance.

## CLAIMS HISTORY

30. On August 28, 2024, Steel Dynamics, on behalf of itself and SWVA, provided Interstate with first notice of the loss.

31. On October 15, 2024, Interstate informed Steel Dynamics' Risk Manager, Kyle Godfrey, that Steel Dynamics' Property Policy contained a $25 million sublimit for radioactivity pollution and instructed Steel Dynamics to submit a claim under the Property Policy, if it had not already done so.

32. On October 30, 2024, Interstate sent follow-up correspondence again requesting that Steel Dynamics place the Property Policy insurer on notice.

33. On January 10, 2025, Interstate issued a coverage-position letter advising Steel Dynamics that Interstate's investigation of the claim was ongoing, and it needed additional information to complete its investigation.

34. Among other things, the January 10, 2025 letter stated that coverage under Coverage Section C of the EIL Policy for property damage to Steel Dynamics' own property was subject to a $10 million limit of liability and would not be triggered unless and until Steel Dynamics satisfied a $5 million self-insured retention. A true and accurate copy of Interstate's January 10, 2025, coverage position letter is attached hereto as **Exhibit B.**

35. In the same letter, Interstate stated that the Property Policy identified in the Scheduled Underlying Insurance contained a $25 million sublimit for radioactive contamination that provided coverage for the claim. Interstate took the position that, pursuant to paragraph 5 of the EIL Policy's Other Insurance clause, the EIL Policy was excess to the Property Policy.

36. Interstate also advised that, pursuant to Endorsement No. 14 of the EIL Policy, coverage under the EIL Policy is excess to the scheduled Property Policy.

37. Interstate further advised that it would have no obligation to provide coverage under the EIL Policy until the Property Policy's limits were exhausted and Steel Dynamics satisfied the applicable self-insured retention under the EIL Policy.

38. Interstate's January 10, 2025, letter further advised that Interstate's ongoing investigation and review of the claim were expressly made subject to a full and complete reservation of all of Interstate's rights under the EIL Policy and at law.

39. On January 23, 2025, Steel Dynamics emailed Interstate to inquire whether Steel Dynamics should place its Property Policy insurer on notice. Interstate responded that same day, again requesting that Steel Dynamics notify its property insurer.

40. On April 29, 2025, Interstate issued follow-up correspondence, requested a copy of the Property Policy and again asked that Steel Dynamics' property insurer be placed on notice of the claim.

41. On October 6, 2026, Steel Dynamics provided Interstate with an overview of its coverage position. Specifically, Steel Dynamics asserted that Interstate incorrectly claims that Steel Dynamics sustained property damage to the baghouse filters because they were not physically injured as they continued to function for months, captured dust as designed, and were replaced only because replacement was less costly and safer than professional cleaning.

42. On that same date Steel Dynamics further asserted that the temporary presence of Cesium-137 in the baghouse system was not "property damage" because the system never stopped operating and the contaminant was later removed through operation and clean-up.

43. In a supplemental coverage position letter being issued contemporaneous with the filing of the instant Complaint, Interstate is advising Steel Dynamics that it is maintaining its coverage position that the damage to the baghouse and baghouse filters qualifies as Property Damage under the Radioactive Contamination sublimit of the Property Policy and that the EIL Policy is not triggered until the sublimit of the Property Policy is exhausted and the $5M self-insured retention under the EIL Policy is similarly satisfied.

**COUNT ONE**
**(Declaratory Judgment – Coverage Under the EIL Policy is Subject to Applicable Limits and Retention)**

44. Interstate repeats and re-alleges the allegations of paragraphs 1 through 43 as if fully set forth herein.

45. Interstate seeks a declaration that, pursuant to the terms, provisions, definitions, conditions, and exclusions of the EIL Policy, coverage for the damage arising out of the radioactive incident at the Facility is subject to a limit of liability of $10,000,000 and a $5,000,000 Self-Insured Retention.

46. An actual, justiciable and ripe controversy exists between Interstate and Steel Dynamics concerning Interstate's duty to indemnify Defendants under the EIL Policy, including the coverage limit and policy retention that applies to the Underlying Incident.

47. Interstate is entitled to a declaratory judgment that any duty to indemnify under the EIL Policy is subject to a limit of liability of $10,000,000 and a $5,000,000 Self-Insured Retention.

**COUNT TWO**
**(Declaratory Judgment – Coverage Under the EIL Policy is Excess to the Property Policy)**

48. Interstate repeats and re-alleges the allegations of paragraphs 1 through 47 as if fully set forth herein.

49. Interstate seeks a declaration that, pursuant to the terms, provisions, definitions, conditions, and exclusions of the EIL Policy, any duty to indemnify under the EIL Policy in connection with the Underlying Incident is not triggered until the applicable sublimit of the Property Policy has been exhausted and Defendants have satisfied the applicable Self-Insured Retention of the EIL Policy.

50. An actual, justiciable and ripe controversy exists between Interstate and Defendants concerning Interstate's duty to indemnify Steel Dynamics under the EIL Policy, including whether the EIL Policy applies excess to the Property Policy in connection with this claim.

51. Interstate is entitled to a declaratory judgment that any duty to indemnify Defendants under the EIL Policy is not triggered until the applicable sublimit of the Property Policy has been exhausted and the applicable Self-Insured Retention of the EIL Policy has been satisfied.

**COUNT THREE**
**Declaratory Judgment – Radioactive Contamination Qualifies as Property Damage)**

52. Interstate repeats and re-alleges the allegations of paragraphs 1 through 51 as if fully set forth herein.

53. Interstate seeks a declaration that, pursuant to the terms, provisions, conditions, and exclusions of the Property Policy, contamination of the baghouse and baghouse filter qualifies as property damage under the radioactive contamination sublimit of the Property Policy.

54. An actual, justiciable and ripe controversy exists between Interstate and Steel Dynamics concerning whether, and to what extent, coverage is available under the radioactive contamination coverage of the Property Policy before any duty to indemnify is implicated under the EIL Policy.

55. Interstate is entitled to a declaratory judgment that contamination of the baghouse and baghouse filter qualifies as property damage under the radioactive contamination sublimit of the Property Policy.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Interstate respectfully requests that this Court enter a judgment:

(i) declaring that any duty to indemnify Defendants under the EIL Policy in connection with the Underlying Incident is subject to a limit of liability of $10,000,000 and a $5,000,000 Self-Insured Retention;

(ii) declaring that any coverage for Defendants available under the EIL Policy in connection with the Underlying Incident applies excess to the coverage available under the Property Policy;

(iii) that contamination of the baghouse and baghouse filter arising from the Underlying Incident qualifies as covered property damage under the radioactive contamination sublimit of the Property Policy; and

(iv) granting such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Interstate hereby demands a trial by jury on all issues so triable.

Dated: November 6, 2026

*/s/ Kari A. Shane*
Kari A. Shane
TRESSLER LLP
233 S. Wacker Drive 61st Floor
Chicago, IL 60606
Tel: 312.768.2289
Fax: 312.627.1717
kshane@tresslerllp.com

Suzanne C. Midlige, Esq.*
Patrick K. Coughlin, Esq.*
Hayden Milam, Esq.*
COUGHLIN MIDLIGE & GARLAND LLP
350 Mount Kemble Avenue
Morristown, NJ 07962
(973) 267-0058
smidlige@cmg.law
pcoughlin@cmg.law

hmilam@cmg.law

*Attorneys for Plaintiff, Interstate Fire & Casualty Company*

**pro hac vice* motion forthcoming